PRATT FOOD CO. *v.* BIRD.

1. INJUNCTION—EQUITY JURISDICTION—INJURY TO BUSINESS.
   Though equity will not enjoin a criminal prosecution, nor transfer to its own jurisdiction the trial of a criminal case, nor, as a general proposition, interfere to restrain the publication of a libel, an injunction will issue to restrain the State dairy and food commissioner from placing in the hands of every dealer in the State a bulletin which in effect threatens them with prosecution in case they make use of complainant's products in a form in which they are lawfully sold.

2. STATUTES—SUBJECTS AND TITLES—SUFFICIENCY.
   If what is introduced into a statute by way of amendment might have been incorporated in the act under its original title, the subject of the amending act is germane to the title of the original act under section 20, article 4, of the Constitution.

3. SAME—FOOD LAW.
   A provision fixing a standard of pure food, and providing means to prevent deception in the sale of such food, is within the title of an act to provide for the appointment of a dairy and food commissioner, and to define his powers and duties and fix his compensation.

4. FOOD—STATUTES—APPLICATION.
   A preparation sold as a "food" in packages the labels of which, though they state that it is not sold as a feeding stuff, state that it fattens stock, makes them grow larger and healthier, etc., is subject to regulation under a statute (Act No. 12, Pub. Acts 1905, section 18) applying to "all condimental stock foods, patented and proprietary stock foods, claimed to possess nutritive properties and all other materials intended for feeding to domestic animals."

Appeal from Ingham; Wiest, J. Submitted January 24, 1907. (Docket No. 31.) Decided July 1, 1907.

Bill by the Pratt Food Company against Arthur C. Bird, State dairy and food commissioner, to enjoin the publishing of a bulletin warning the public against buy-

ing or selling complainant's preparations. From a decree dismissing the bill, complainant appeals. Affirmed.

*Thomas, Cummins & Nichols* (*Walter C. Rodman,* of counsel), for complainant.

*John E. Bird,* Attorney General (*George S. Law* and *Charles W. McGill,* of counsel), for defendant.

MONTGOMERY, J. The bill in this case is filed to restrain the defendant, his clerks, and employés from writing, printing, issuing, publishing, or sending out any bulletin, writing, publication, or notice, to the effect that complainant's preparations, sold as Pratt's Food for Horses and Cattle, Pratt's Poultry Food, and Pratt's Animal Regulator, or either of them, are not licensed under Act No. 12, Pub. Acts 1905, and warning the public against buying or selling these preparations. The bill sets out that the defendant asserts and claims that these preparations come within the terms of the act, and that, unless restrained by injunction, he will so assert by bulletins issued to the trade, and by this method intimidate dealers and prevent their purchasing complainant's products. (We are stating simply the substance of the averments in brief.) It also asserted that the effect of such bulletins will be to destroy and ruin the complainant's trade and work irreparable injury. Upon the hearing below the bill was dismissed, and the complainant appeals. Three questions are presented upon the record: *First,* whether, in view of the case, complainant is entitled to the remedy here invoked; *second,* whether Act No. 12, Pub. Acts 1905, is constitutional; *third,* whether, if it be constitutional, the complainant's products come within the terms of the statute.

1. The statute in question is an amendment of Act No. 211, Pub. Acts 1893, entitled "An act to provide for the appointment of a dairy and food commissioner, and to define his powers and duties and fix his compensation," and, by section 18 of the act, it is provided:

"Any manufacturer, company, person or persons who shall sell, offer or expose for sale or for distribution, in this State, any concentrated commercial feeding stuff used for feeding live stock, shall furnish with each car, or other amounts shipped in bulk, and shall affix to every package of such feeding stuff, in a conspicuous place, on the outside thereof, a plainly printed statement, clearly and truly certifying the number of net pounds in the car or package sold or offered for sale, the name or trade-mark under which the article is sold, the name of the manufacturer or shipper, the place of manufacture, the place of business, and a chemical analysis, stating the percentages it contains of crude protein, crude fibre, nitrogen, free extract and ether extract, all constituents to be determined by the methods adopted by the association of official agricultural chemists. Whenever any feeding stuff is sold at retail, in bulk or in packages belonging to the purchaser, the agent or dealer shall furnish to him a certified copy of the chemical analysis named in this section. The term concentrated commercial feeding stuffs as used in this act shall include linseed meal, cotton seed meal, pea meals, cocoanut meals, gluten meals, oil meals of all kinds, gluten feeds, maize feeds, starch feeds, mixed sugar feeds, hominy feeds, rice meals, oat feeds, corn and oat feeds, meat meals, dried blood, clover meals, mixed feeds of all kinds, slaughter house waste products; also all condimental stock foods, patented and proprietary stock foods, claimed to possess nutritive properties and all other materials intended for feeding to domestic animals. * * *"

A penalty is provided for the violation of this provision.

It is strenuously insisted by the attorney general, that, if it be conceded that the complainant's products do not come within the inhibition of this statute, yet no remedy by injunction exists, for the reason that the effect of issuing an injunction is to restrain the prosecution of a criminal proceeding. Numerous cases are cited, among them *Arbuckle* v. *Blackburn*, 113 Fed. 625 (65 L. R. A. 864), *State, ex rel. Kenamore*, v. *Wood*, 155 Mo. 425 (48 L. R. A. 596), and *Pre-digested Food Co.* v. *McNeal*, 1 Ohio N. P. 266. In so far as these cases lay down the rule that a court of equity will not interfere to restrain a

public officer from invoking the criminal law and instituting a prosecution for a violation of a statute, they have our full approval.   A court of equity will not transfer to its own jurisdiction the trial of a criminal case; and this though the prosecution may fall with some hardship upon the accused party.   Nor, as a general proposition, will a court interfere to restrain the publication of a libel.   But we held in *Beck* v. *Protective Union*, 118 Mich. 497 (42 L. R. A. 407), that injunction will lie to restrain a combination of persons from acts which tend to ruin complainant's business by bringing to bear upon his customers intimidating and coercive means.   The principle which should rule the present case is identical.   If the acts which are threatened are unlawful, it cannot be doubted that placing in the hands of every dealer in the State a bulletin which in effect threatens them with prosecution in case they make use of these products in the form in which they are lawfully sold to them, would be to absolutely exclude complainant's business from the State. The case presented is very similar in this aspect to that of *American School of Magnetic Healing* v. *McAnnulty*, 187 U. S. 94, which case involved the right of the postmaster general to exclude the complainants from the use of the United States mails.   An order had been made excluding complainants from the use of the mails.   The court interfered and held that such order was a violation of the property rights of the person affected and granted relief.

2. Is the law constitutional ?   It is claimed that the law is unconstitutional, in that it violates section 20 of article 4 of the Constitution, which provides that no law shall embrace more than one object, which shall be expressed in its title.   It is established by our decisions that, if what is introduced by way of an amendment to an act might have been incorporated in the act under its original title, there is no violation of this section.   *People* v. *Gadway*, 61 Mich. 285; *Attorney General, ex rel. Maybury*, v. *Bolger*, 128 Mich. 355.   The question is, therefore,

whether, under the original title, a provision fixing a standard of pure food, and providing means to prevent deception in the sale of such food, is within the title of an act to provide for the appointment of a dairy and food commissioner, and to define his powers and duties and fix his compensation. We think the title is within our previous decisions sufficient. It is obvious to one reading this title that there must have been imposed upon the commissioner certain powers and duties to make his department of any value to the State, and, furthermore, that these powers and duties must have relation to something. It is equally obvious that the relation of these powers and duties must be to the subject which is brought within the department that is created, viz., the dairy and food department. The title is very similar to that which established the insurance bureau. In *Connecticut Mut. Life-Ins. Co.* v. *State Treasurer*, 31 Mich. 6, it was held that a title which read "An act to establish an insurance bureau" was sufficiently broad to cover any pertinent regulations respecting the bureau's course of action towards those engaged in insurance, and any appropriate provisions for prescribing the duty due from the insurance companies to the State in the matter of taxation, without violating the constitutional provision.

3. The question of more difficulty is the question of fact, as to whether the preparations of complainant are concentrated commercial feeding stuffs as defined by the act cited above. It is true the testimony shows that upon each of the labels which accompanied Pratt's Food for Horses and Cattle was the statement:

"Pratt's food is a regulator, to be used according to directions, and is not sold as a feeding stuff, nor is it to be fed in place of grain or any other feed."

But, in addition to claiming medicinal properties for the food, it was also stated how it should be used to fatten and improve stock. It was stated that:

"It fattens both cattle and hogs quickly, makes them

grow larger and healthier, and makes their meat tender, more juicy, and better eating."

It also stated that for horses it "produces bone, muscle, better staying powers, and improves the wind." When this statute was enacted, commercial feeding stuffs were on the market, and this fact must have been known to the legislature. In employing the broad language "all condimental stock foods, patented and proprietary stock foods, claimed to possess nutritive properties and all other materials intended for feeding to domestic animals," the legislature intended to cover all preparations for which the claim of nutritive qualities was made. Complainant's preparations come within this language. Similar representations were made in the labels of other preparations. We are of the opinion that the circuit judge was right in holding that all these preparations were within the statute.

The decree is affirmed, with costs.

BLAIR, OSTRANDER, HOOKER, and MOORE, JJ., concurred.