(115 N. W. 843.)

---

STATE OF NORTH DAKOTA, EX REL E. F. LADD, v. THE DISTRICT COURT IN AND FOR CASS COUNTY, THIRD JUDICIAL DISTRICT OF THE STATE OF NORTH DAKOTA, AND HON. CHAS. A. POLLOCK, JUDGE OF SAID COURT.

Opinion filed March 20, 1908.

**Pure Food Commissioner — Injunction — Acts Beyond Authority.**

1. The legality of the acts of the pure food commissioner, and the question whether he is exceeding the powers conferred upon him by the law under which he is authorized to act, may be tested in an action to enjoin him from the commission of acts alleged to be without authority.

**Same — Jurisdiction — Multiplicity of Suits.**

2. A district court may properly entertain jurisdiction of an action brought by parties whose property is about to be destroyed by the pure food commissioner, and who will, from the nature of their business and other facts, be thereby subjected to a multiplicity of suits to enjoin him from unlawfully proceeding.

**Same — Irreparable Injury.**

> 3. The pure food commissioner may be enjoined from distributing circulars or bulletins condemning the property of manufacturers as harmful and deceptive to the public, when the acts of the commissioner are in excess of the power or authority conferred upon him by law, and would cause irreparable injury.

**Prohibition — Illegal Acts of Officer — When Writ Will Issue.**

> 4. The writ of prohibition will not issue against a district court to restrain it from further proceedings in an action to enjoin the pure food commissioner, when the issue in that court is the legality or the illegality of the acts threatened by the commissioner, and the record leaves this question in doubt.

Application by the state, on the relation of E. F. Ladd, for a writ of prohibition to the district court of Cass county and Charles A. Pollock, Judge.

Temporary writ vacated, and application denied.

*Barnett & Richardson, Engerud, Holt & Frame,* and *T. F. Mc-Cue,* Attorney General, for the relator.

Food commissioner's error in deciding upon a prohibited product, or in his conclusions and published statements; or that his prosecution may fail, and a party be without remedy. does not warrant an injunction. Arbuckle v. Blackburn, 113 Fed. 617; Pleasants v. Smith, 43 So. 467; Davis v. Society, etc., 75 N. Y. 362.

If his statements are incorrect, the publication is libel. Arbuckle v. Blackburn, supra; Francis v. Flinn, 118 U. S. 385, 30 L. Ed. 165; Ferrell v. Warren, 3 Wend. 253; Burns v. Erben, 40 N. Y. 463; Butolph v. Blush, 5 Lans. 84.

The guilt or innocence of the maker of a prohibited article cannot be tried out in equity. Pleasants v. Smith, supra; Stephens v. McAid, 98 N. Y. S. 553; Gramer v. Truett, 79 S. W. 4; Davis v. Society Prevention Cruelty, 75 N. Y. 363; Delaney v. Flood, 183 N. Y. 323; Power v. Village of Desplaines, 13 N. E. 819; Moses v. Mayor, 5 Ala. 209; Suess v. Noble, 31 Fed. 855; Hemsley v. Myers, 45 Fed. 283; Brown v. Mayor, 37 So. 173.

Upon application for an injunction constitutionality of law not determined; such determination is for the main action. Wallock v. Society, etc., 67 N. Y. 23; Paulk v. Mayor, 30 S. E. 417; Paul v. City, 47 S. E. 793; Levy v. City, 27 La. Ann. 620; West v. N. Y. 10 Paige, 539, 27 Cent. Dig. Injunction, section 132.

Prosecution criminally for same matter will not be enjoined. Suess v. Noble, supra. Moses v. Taylor, 52 Ala. 198; Stuart v. Supervisors, 83 Ill. 341; Joseph v. Burk, 46 Ind. 59; Gault v. Walles, 53 Ga. 675.

Writ of prohibition issues to an inferior court that has exceeded its jurisdiction, or has assumed to proceed in a case of which it has no cognizance. High on Ex Rem, section 765, 767, 769, 772; Ex Parte Smith, 23 Ala. 94; Quimbo Appo. v. People, 20 N. Y. 531; Havemeyer v. Superior Court, 24 Pac. 121.

Legislature may prohibit manufacture and sale of foods although not injurious to health. Palmer v. State, 48 Am. Rep. 429; Shivers v. Newton, 45 N. J. L. 469; State v. Smyth, 51 Am. Rep. 344; Cook v. State, 20 So. 360; Com. v. Tobias, 6 N. E. 217; Weller v. State, 40 N. E. 1001; State v. Dreher, 44 N. E. 510. People v. Girard, 39 N. E. 823; People v. Cipperly, 4 N. E. 107.

May establish a standard of purity of foods, although they are harmless. State v. Crescent Cre. Co. 86 N. W. 107; Butler v. Chambers, 30 N. W. 308; State v. Smyth, 51 Am. Rep. 344; State v. Campbell, 13 Atl. 585; People v. Arensburg, 11 N. E. 277; People v. Marx, 2 N. E. 29; Powell v. Penn. 127 U. S. 618; State v. Tetu, 107 N. W. 953.

*Ball, Watson, Young & Hardy,* for defendant.

The writ of prohibition issues only in cases affecting the state's sovereignty, its franchises, or prerogatives and the liberties of the people. State v. Nelson Co., 1 N. D. 88, 45 N. W. 33.

It is not a writ of right, its issuance is discretionary; lack or excess of jurisdiction in the lower court, is not alone sufficient, but it must appear that applicant has no adequate remedy in the ordinary course of law by appeal or certiorari. Murphy v. Supreme Court, 24 Pac. 310; People v. Dist. Court, 19 Pac. 541; State v. District Court, 2 N. W. 698; Stoddard v. Supreme Court, 40 Pac. 491; Mustin v. Sloan, 11 S. W. 558; State v. Jones, 27 Pac. 452; Powelson v. Lockwood, 23 Pac. 143; Strouse v. Police Court, 24 Pac. 747; Levy v. Wilson, 10 Pac. 272; State v. Rightor, 5 So. 102; In re Fassett, 142 U. S. 479; State v. Whitaker, 19 S. E. 376.

Without an application to the trial court and an adverse ruling upon the jurisdiction, or excess of jurisdiction, writ of prohibition will not issue. State v. Attorney General, 39 S. W. 276; Southern

Pacific Railroad Co. v. Court, 59 Cal. 471; Baughman v. Supreme Court, 72 Cal. 572; People v. Judge, 3 N. W. 851, 913.

Equity will enjoin public officers, proceeding under a claim of right, and about to impair property rights or cause multiplicity of suits. Smith v. Bung, 15 Ill. 400; M. & H. Ry. Co. v. Archer, 6 Paige, 262; Belknap v. Belknap, 2 Johns C. R. 463; Schuster v. Board of Health, 49 Barb. 450; Jewett Bros. v. Smail, 105 N. W. 738; Sweet v. Holbert, 51 Barb. 312; Rogers v. Board of Health, 31 Barb. 447; School of Magnetic Healing v. McAnnulty, 187 U. S. 94; Mutual Life Ins. Co. v. Boyd, 82 Fed. 705; Glover v. Board of Flour Inspection, 48 Fed. 348; McChord v. Lanville, 183 U. S. 483; Smyth v. Ames, 169 U. S. 466; Touchman v. Welch, 42 Fed. 548; Western Union Tel. Co. v. Wyatt, 98 Fed. 335; Felts v. McGehue, 172 U. S. 516; Pratt Food Co. v. Bird, 112 N. W. 701; Ex Parte Dietrich, 84 Pac. 770.

Equity may, in a proper case, restrain criminal proceedings. Manhattan I. W. Co. v. French, 12 Abb. N. C. 446; Schandler B. Co. v. Welch Co. 42 Fed. 561; Platte & D. & G. v. Lee, 29 Pac. 1036; Hall v. Schultz, 31 How. Pr. 331; Glover v. Board, 48 Fed. 348; Spink v. Francis, 19 Fed. 670; Wadley v. Bount, 65 Fed. 667; Tuchman v. Welch, 42 Fed. 548.

The state cannot prohibit, but may regulate the sale of wholesome food to prevent fraud. Schallenberger v. Pa. St. 171 U. S. 1; Collins v. New Hampshire, 171 U. S. 30; Dorsey v. Texas, 40 L. R. A. 201; Helena v. Dayer, 39 L. R. A. 266; Chicago v. Netcher, 48 L. R. A. 261; Frost v. Chicago, 49 L. R. A. 657; In re Jacobs, 98 N. Y. 98.

SPALDING, J. On the 3d day of October, 1907, certain manufacturers of flour whose mills are located within this state commenced an action against Pure Food Commissioner E. F. Ladd in the district court of Cass county for the purpose of enjoining him from issuing or causing to be issued further circulars or bulletins condemning the flours manufactured by the plaintiffs in that action in the manner described in their complaint, and particularly the flour in the manufacture of which the process known as the "Alsop process" was employed, and from certifying to the county auditors the flours so manufactured by them as adulterated, and from seizing or causing to be seized such flours, and from in-

stituting or causing to be instituted prosecutions against the plaintiffs therein under chapter 195, p. 315, Laws 1907. The complaint in that action among other things alleged that the plaintiffs therein were the owners of and engaged in operating flouring mills in various parts of the state, having a total capacity of 5,050 barrels of flour per day, and that they had for a long time prior to the commencement of such action been engaged in such business; that for the purpose of conducting such business, they had installed expensive plants aggregating in value many hundreds of thousands of dollars, and that they manufactured each year more than 50 per cent. of all the flour manufactured and used in the state; that complaint further alleged that the growing of wheat was the principal agricultural industry, and the milling of the same the principal manufacturing industry, of the state, and that the state produced more wheat and more flour than could be consumed by its people. That the wheat producers and millers must and do depend upon foreign markets for the sale of their product; that by reason of this fact they were forced into competition with the large mills of other states, and, unless able to manufacture flour under the same conditions as the mills of other states, they would be rendered unable to sell in competition with them; that within the past few years there had been adopted by the millers of the United States, Europe and elsewhere a process for aging and conditioning flour at the time of its manufacture known as the "Alsop Process;" that such process had received general recognition and approval in all of the several states of the Union and in foreign countries, and was in general use by commercial mills throughout the United States, and by said plaintiffs in their respective mills, as well as by other millers of the state; that said process was used in the manufacture of about 80 per cent of the flour manufactured within the state, and had been adopted by plaintiffs after thorough investigation, from which it was found that it did not render the flour so manufactured harmful, but, on the contrary, that it improved it; and that as a result of such investigation and the information thereby obtained the plaintiffs had installed said process within their mills at a very great expense. The complaint contained a description of the process and an allegation that nothing was used therein other than a flaming discharge of electricity and air, which matured and conditioned and slightly whitened in color and rendered more marketable the flour so manufactured, and made it more acceptable to the consumer, improved its

bread-making qualities, and that no harmful ingredients were added, and no necessary constitutent in whole or in part extracted, and that the flour so manufactured under said process did not deceive or tend to deceive the purchasing public. Such complaint also shows plaintiff's claims as to the benefits derived by them and the public from the use of such process, particularly by reason of the saving made in storage and the ability of the millers to immediately market their product, saving to them and to the public the expense of storage during the period otherwise required for aging and conditioning the flour manufactured by them. The act of the legislature commonly designated as the "Pure Food Law," being chapter 195, p. 315, Laws 1907, is set out at length in such complaint, and it is alleged that Prof. E. F. Ladd was appointed commissioner and chemist thereunder, and that since about the 8th day of March, 1907, he had been exercising the authority enjoined upon him as such commissioner and chemist by said act, and that, pretending and assuming to act under the authority of the act of the legislature referred to, he had issued and caused to be circulated through the mails a circular or bulletin directed against the flour manufactured by said plaintiffs, and had caused the same to be published in the newspapers in the state, such bulletins being entitled "Bleached Flour Warning," and bearing date September 10, 1907; that in said bulletin he warned the manufacturers and the dealers that after October 1, 1907, the sale of flour described therein would be in violation of the pure food law of the state, and condemned the flours manufactured by said plaintiffs in the manner described. It also alleged that, assuming to act under authority of the act of the legislature referred to, he was then threatening to institute criminal prosecutions against said plaintiffs and others, and to cause plaintiff's property manufactured under said process to be seized and destroyed, and that he was threatening to, and would, under the assumed authority contained in section 9 of said act (page 318), certify to each of the county auditors of the state, and cause to be published in the several counties, a statement that their flours were adulterated, when, in fact, such flours manufactured under said process were not adulterated, and were not within the condemnation of said act. The nature of their business, and the great value of this process to them through enabling them to successfully compete with other mills, was shown. It was further alleged that, if prevented from continuing the use of such process, they would sustain irreparable injury, and that from the acts

threatened to be performed by said Ladd, as aforesaid, great damage and loss would be sustained by said plaintiffs, and that by reason thereof, and of the seizures threatened, they would be involved in a multiplicity of suits, and that they were possessed of no adequate remedy at law. It was then alleged that the flours manufactured by them under such process were not within the condemnation of said act of the legislature, and not within the description contained within the bulletins and circulars issued and threatened to be issued by said Ladd, and that the provisions in said chapter were obnoxious to certain articles of the constitution of the United States and the state constitution. The district court of Cass county issued a temporary restraining order, and an order to show cause against said Ladd why such restraining order should not be continued pendente lite. Ladd answered, denying generally the material allegations of the complaint, and also detailed his investigations of the subject of flour treated by the process described and his conclusions therefrom, and averred that such process transmitted to the flour deleterious ingredients which were poisonous substances, and made the flour detrimental to the health of the consumers, and reduced and injuriously affected its quality and strength. He also set forth facts tending to show that it enabled the millers to produce a flour by mixing low grade with higher grade flour, in appearance the same as if the latter had only been used, and other facts tending to show the inferiority of the flour manufactured under such process. The order to show cause was heard by the district court November 16, 1907, when the defendant in that action submitted a motion to the court for the dissolution of the temporary restraining order, and the dismissal of the action on the ground that the complaint did not state a cause of action, and did not state facts sufficient to entitle plaintiffs to any equitable relief. On the hearing of said order to show cause the affidavit of Professor Ladd was used on the one side, and the affidavits of the millers and a number of experts and others upon the other side, and the court denied the motion to dissolve said restraining order and dismiss the action, and continued such order in force and effect, pending the final determination of the action, save and except so much thereof as enjoined or prohibited said Ladd in his capacity as a private citizen from making criminal complaints, upon his own information, against persons guilty of violating the pure food law of the state. Thereupon said Ladd applied to this court for the issuance of a writ of prohibition directed to the district

court in and for Cass county and the judge thereof, commanding and directing said court and judge to desist from further proceeding in the cause mentioned, and to dismiss said action, and quash the injunctional orders therein made and entered. Upon such application this court issued its temporary writ, and we are now called upon to determine whether it shall be made permanent.

We deem it altogether unnecessary to set out the affidavit of Prof. Ladd in support of his application, and of his contention that the process used by the millers referred to is harmful and deceptive, or the numerous and lengthy affidavits of the experts named, submitted on behalf of the defendant in this proceeding to the contrary. Many points were raised by both the relator and the defendant and argued in this court, which we shall not determine, because, from the view we take of the law and the rights of the parties, their determination is unnecessary, and would be improper. The ground which underlies the relator's demurrer interposed in the district court, and his application for the writ in this court, is that the courts of this state have no authority to entertain an action having for its purpose the enjoining of a public official while executing or claiming to execute a public statute for the public benefit. He construes paragraph 4, § 6631, Rev. Codes 1905, as a prohibition upon courts from entertaining suits of this kind. That statute is as follows: "An injunction cannot be granted * * * (4) to prevent the execution of a public statute by officers of the law for the public benefit. * * *" We do not so construe this provision of the code. Rather we construe it to mean that when a suit is tried wherein it is sought to enjoin an officer from executing a statute he shall not be enjoined when found to be regularly and lawfully executing the statute for the public benefit. If acting in excess of, or without, authority, he is not executing a public statute. There must be some method to protect people and property against the unlawful execution of statutes by public officials, and we think the provision referred to was not intended to preclude an inquiry on the part of courts in a suit to enjoin as to the legality of official acts. The contention in this case is that the food commissioner has misinterpreted the law, and that the products of the millers interested do not come within the condemnation of the pure food law, and that, instead of the district court exceeding its jurisdiction, Prof. Ladd is the party who is acting in excess of the authority conferred upon him by the statute. It is the property interests of the millers and others that are at stake

in that proceeding. Their investments in plants and machinery are very great. Their investment in installing the process referred to amounts to many thousands of dollars, and it is clear that, if prevented from making use of this process, the latter investment will be lost, and it is alleged that in that case they will be unable to sell their products in competition with the millers of this state or other countries, either in this state or elsewhere, and it is clearly evident that if this be true no computation can be made of the damages which their property will sustain. Great reliance is placed by the relator upon Arbuckle v. Blackburn, 113 Fed. 616, 51 C. C. A. 122, 65 L. R. A. 864, but we do not consider it in point. It holds that the federal court cannot enjoin a food commissioner from instituting criminal prosecutions under a state statute, and the opinion seems to us to contain nothing indicating that the courts should not entertain such an action where the contentions of the parties are like those in the case at bar. That court says: "We are cited to cases holding that equity has jurisdiction to enjoin acts likely to be destructive of property rights, although the acts complained of constitute infractions of the criminal law. This is quite a different proposition from enjoining a criminal proceeding alleged to be indirectly destructive of property rights." We are unable to conclude that that case is an authority under the facts alleged in the case at bar. State v. Fisk, 15 N. D. 219, 107 N. W. 191, is relied upon as holding that an injunction will not lie, but it does not establish any such comprehensive principle. This court found in that case, from the record, that the drainage board was proceeding in all things in accordance with statutory requirements, and acting regularly and within its exclusive jurisdiction. There was no claim that the commissioners did not have jurisdiction to establish a drain and do all things necessary for its construction, and it was held, therefore, that the district court exceeded its jurisdiction in enjoining the commission. That is not this case as far as it had gone when brought here. There had been no trial and no findings on the part of the district court as to the acts of the food commissioner, and no final determination whether he was proceeding in accordance with law and the powers it conferred upon him, or whether he was exceeding his lawful powers and proceeding contrary to law, and we cannot presume that the district court will permanently enjoin him from executing the statute if it finds him acting in accordance with its provisions, and that the products of the millers are within its terms. If the plaintiffs in

that case·have ʾasked for greater relief than they are entitled to, that does not deprive the district court ʾof jurisdiction of that proceeding. It may find them entitled to some of the relief asked for, and to an injunction against some of the acts complained of, and not against others. Section 6631 is identical with a section of the California code. ʾCourts of that state seem not to have been called upon to pass upon this frequently, but we find in Payne v. English, 79 Cal. 540, 21 Pac. 952, it was sought to enjoin the State Harbor Commissioners from taking land which they had no right to take, and the judgment of the lower court in favor of the commissioners was reversed notwithstanding their contention that this section of the code inhibited an injunction. Nelson v. State Board of Health, 108 Ky. 769, 57 S. W. 501, 50 L. R. A. 383, is directly in point. A graduate of a school of osteopathy sought to enjoin the board ʾof health from molesting him in his profession as an osteopath. The trial court dismissed the action, and the Court of Appeals reversed its judgment and directed a perpetual injunction restraining the board from interfering with or prosecuting him for the practice of osteopathy, basing its decision on the ground that the practice of osteopathy was not included within the terms of the statute making it unlawful for any person to practice medicine without a certificate from the Board of Health. In Pratt Food Company v. Bird, 148 Mich. 631, 112 N. W. 701, it is held that equity will restrain an officer from unlawfully placing in the hands of every stock food dealer in the state a bulletin, in effect threatening them with prosecution, if they should use manufacturer's products sold in lawful form. The Supreme Court of the United States in American School of Magnetic Healing v. McAnnulty, 187 U. S. 93, 23 Sup. Ct. 33, 47 L. Ed. 90, passed upon a similar question. The federal statute authorizes the Postmaster General, upon evidence satisfactory to him that any person is engaged in conducting any of certain fraudulent schemes through the mails by means of false or fraudulent pretenses, etc., to instruct the postmasters at offices at which registered letters arrived directed to any such person to return them, stamped with the word "fraudulent." The government demurred to the complaint of the party whose mail had been so returned, on the ground that it did not state a ground for equitable relief, or show any reason why an injunction should be granted. The trial court sustained the demurrer, but its judgment was reversed by the supreme court notwithstanding the con-

tention of the government that the Postmaster General could not be supervised or controlled by the court in the exercise of his discretion, and that the finding of the Postmaster General was an act involving the exercise of judgment or discretion on his part. The court held that the fact that the post office is a part of the administrative department does not necessarily and always oust courts of jurisdiction to grant relief to the party aggrieved by any action by the head or the subordinate officials of that department, which is unauthorized by the statute under which he assumes to act, and that "the acts of all officers must be justified by some law, and in case an official violates the law to the injury of an individual the courts generally have jurisdiction to grant relief." The supreme court instructed the circuit court to grant a temporary injunction, and to permit the government, if it could, to show that the business of the complainants as in fact conducted amounted to a violation of the statutes. See, also, Smith v. Bangs et al., 15 Ill. 400; Belknap et al. v. Belknap, 2 Johns. Ch. 463, 7 Am. Dec. 548; Mohawk & Hudson R. Co. v. Archer, 6 Paige, Ch. (N. Y.) 83; Rogers v. Barker et al, 31 Barb. (N. Y.) 447; Schuster v. Met. Board of Health, 49 Barb. (N. Y.) 450; Sweet v. Hulbert, 51 Barb. (N. Y.) 312; 22 Cyc. 881. These cases establish the principle that a court of chancery has undoubted jurisdiction to interfere by injunction in a case where public officials are proceeding illegally and improperly under claim of right, or where the exercise of such jurisdiction is necessary to prevent a multiplicity of suits, or irreparable injury to property. 5 Pomeroy on Equity Jurisprudence, section 321, states the rule to be that a public official may be restrained in a case coming under the recognized head of equity jurisprudence from acting illegally to the injury of individuals, but that the mere fact that he is acting illegally is not sufficient to warrant equitable interference. There must be, in addition, an injury to the property rights of the party applying for relief. See, also, section 322. The case of the People v. Canal Board, 55 N. Y. 390, is also directly in point. Most of the authorities to which our attention has been called denying the right to an injunction go to the ultimate question as to whether the injunction should be granted, and not to the right or the power of the court to hear or determine an action to enjoin an officer. Minneapolis Brewing Company v. McGillivray (C. C.) 104 Fed. 258, holds that an injunction will lie to prevent the destruction of property and the ruin of

business by an officer. We are of the opinion that an action instituted in the district court for an injunction is a proper action by which to determine whether the acts of the food commissioner are in accordance with or in violation of law, and that that court has power and jurisdiction to entertain such an action, and if it found that that official is, under color of law, proceeding in an unlawful manner, and is illegally condemning the products of the millers of the state, it may permanently enjoin him from so doing.

It follows that the temporary writ issued by this court must be vacated, and the relator's application denied. All concur.