CRESCENT MFG. CO. v. MICKLE.

(District Court, D. Oregon. August 3, 1914.)

No. 6375.

1. FOOD (§ 5*) — ADULTERATION — BAKING POWDER — PRESENCE OF EGG ALBUMEN.

The presence of egg albumen in baking powder, which neither adds to, nor subtracts from, its leavening qualities, but only serves to demonstrate, in a simple way, the presence of carbon-dioxide, and whether the product has become stale and unfit for use, and does not make the pow-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

der appear better or of greater value than it really is, did not render the same violative of the Oregon Food Law (L. O. L. §§ 4830, 4831), declaring that an article should be deemed adulterated if it is so treated that a damaged or inferior article is sold or made to appear better or of greater value than it really is.

[Ed. Note.—For other cases, see Food, Cent. Dig. § 1; Dec. Dig. § 5.*]

2. FOOD (§ 15*)—BAKING POWDER—LABELING.

Where baking powder was composed of bicarbonate of soda, calcium acid phosphate, sodium aluminium sulphate, egg albumen, and corn starch, a legend on the label, reciting, "This Baking Powder contains the following ingredients and none other: Starch, Egg, Phosphate, Bicarb. Soda, Sodium Aluminium Sulphate," constituted a substantial compliance with the Oregon Food Law (L. O. L. § 2231), making it unlawful for any person to sell baking powder in Oregon which does not have printed on the label, in plain English, free from all technical or chemical phrases, the names of all the ingredients composing it.

[Ed. Note.—For other cases, see Food, Cent. Dig. § 14; Dec. Dig. § 15.*]

In Equity. Suit by the Crescent Manufacturing Company, a corporation, against J. D. Mickle. Decree for complainant.

C. A. Riddle, of Seattle, Wash., for complainant.

A. M. Crawford, Atty. Gen., of Salem, Or., and Walter H. Evans, Dist. Atty., of Portland, Or., for defendant.

WOLVERTON, District Judge. This is a suit to enjoin J. D. Mickle, who is the State Dairy and Food Commissioner, from interfering with the sale in Oregon of Crescent Baking Powder, which is a product manufactured by complainant in Seattle, Wash., and sold in many states. The questions presented for determination arise upon motion of the complainant for judgment on the bill and answer.

Reduced to their ultimate analysis, the pleadings, as to all material issues, show about this state of facts: The Crescent Manufacturing Company is a Seattle, state of Washington, corporation, engaged, among other things, in the manufacture and sale of a food product known as Crescent Baking Powder, which is a mixture or compound consisting of five ingredients, namely: Bicarbonate of soda, calcium acid phosphate, sodium aluminium sulphate, egg albumen, and corn starch. The egg albumen used in the powder is clean, wholesome, and nutritious, and enters into and becomes a part of the product to the same extent as all other ingredients therein.

Complainant is engaged also in selling its product to wholesale and retail dealers in Oregon, and has heretofore sold and transported large quantities from Seattle, in the state of Washington, into the state of Oregon, and has established a large business and trade therefor within the latter state.

The defendant J. D. Mickle is the Dairy and Food Commissioner for the state of Oregon, and intends and threatens to, and will, make and issue a ruling to bar and prevent the sale of such product within the state, because the same is declared to be adulterated, and the packages containing it are not labeled as required by the food laws of Oregon.

The complainant avers that Crescent Baking Powder is not adulterated nor misbranded within the meaning of the food laws of Oregon,

and that it is labeled and branded in full compliance with the labeling requirements of all such laws, a copy of the label being set forth; that said baking powder as an article of food does not contain any added poisons or deleterious substances of any kind whatsoever; that it is a mixture and compound under its own distinctive name, and is not an imitation of, or offered for sale under, a distinctive name of any other article whatsoever; and that the name "Crescent Baking Powder" is plainly printed on all tins or receptacles in which said mixture or compound is packed or shipped or offered for sale, accompanied on the same label with a statement of the place where said article has been and is manufactured or produced.

It is denied that said baking powder is not adulterated nor misbranded, or that it is labeled or branded in compliance with the labeling requirements of said laws, and it is alleged that said baking powder is adulterated by reason of an infinitesimal amount of egg albumen therein, which, while not of itself harmful, is used for the purpose of deceiving and defrauding the public into believing that said baking powder is better and of greater value than it really is, and that said compound is misbranded in that the ingredients are not properly designated on the label. It is further denied that said baking powder is a mixture or compound under its own distinctive name, or that the compound is an article of food, or other than a compound used in preparing articles of food. All other matters herein set out stand admitted by the answer.

The bill of complaint further expressly negatives, with reference to Crescent Baking Powder, every clause of the statute, section 4831, Lord's Oregon Laws, declaring when any article of food shall be deemed adulterated within the meaning thereof.

Full compliance with the statute is admitted, except it is denied that no substance has been mixed with petitioner's product to lower or depreciate, or injuriously affect its quality, strength, or purity, and affirmatively alleged that its value is depreciated to the extent of the amount of egg albumen contained therein, for the reason that egg albumen has no leavening power in itself. And it is further denied that complainant's product is not a damaged or inferior article of food, or is not made to appear better or of greater value than it really is.

There can be no question that under the allegations of the bill the complainant is engaged in interstate commerce, in the shipment from Seattle, Wash., into the state of Oregon, and the sale of its baking powder to wholesale and retail dealers therein; the said commodity coming to dealers within this state in the original packages. McDermott v. Wisconsin, 228 U. S. 115, 33 Sup. Ct. 431, 57 L. Ed. 754, 47 L. R. A. (N. S.) 984.

Further, the suit is in legal effect against Mickle as an individual, and not against him as an officer of the state, or against the state. Mickle avows his purpose and intention of excluding and barring complainant's product from the markets of the state, assigning as his reason therefor that said product has been declared (the declaration being his) to be adulterated and misbranded within the meaning of the Oregon food laws. Besides, he threatens, and is threatening, according to the complaint, to issue a warning addressed to the various wholesale

and retail merchants in the state to the effect that said baking powder is adulterated, and thus intimidating the dealers against buying and selling the product, whereby the business of complainant is seriously injured and impaired. Scully v. Bird, 209 U. S. 481, 28 Sup. Ct. 597, 52 L. Ed. 899; Pratt Food Co. v. Bird, 148 Mich. 631, 112 N. W. 701, 118 Am. St. Rep. 601; State ex rel. Ladd v. District Court, 17 N. D. 285, 115 N. W. 675, 15 L. R. A. (N. S.) 331.

The food laws of Oregon, so far as they are pertinent here, provide:

Sec. 4830, L. O. L. "The term 'food,' as used herein, shall include all articles used for food or drink, or intended to be eaten or drunk by men, whether simple, mixed, or compound."

Sec. 4831. "Any article shall be deemed to be adulterated within the meaning of this act: (1) If any substance has been mixed with it so as to lower or depreciate, or injuriously affect its quality, strength, or purity. (2) If any inferior or depreciating substance has been substituted wholly or in part for it. (3) If any valuable or necessary consistent or ingredient has been wholly or in part abstracted from it. (4) If it is in imitation of or sold under the name of another article. (5) If it contains wholly or any part of the diseased, decomposed, putrid, tainted, or rotten animal or vegetable substance or article, whether manufactured or not. Or in case of milk, if it is the product of a diseased animal. (6) If it is colored, coated, polished, or powdered, whereby a damaged or inferior article is sold, or if made to appear better or of greater value than it really is. (7) If it contains any added substance or ingredients which is poisonous or injurious to health. * * * Provided further, that the provisions of this act shall not apply to a mixture or compound recognized as ordinary articles or ingredients of food in which every package sold or offered for sale has the name and address of the manufacturer and be distinctly labeled under its own distinctive name and in a manner to plainly and correctly show that it is a mixture or compound."

This latter proviso is perhaps superseded by a later statute, which conforms more nearly with the federal statute on the subject. Sess. Laws 1913, pp. 213, 214.

These provisions are the same in effect as are contained in the National Food and Drugs Act of June 30, 1906 (34 Stat. 768, 770, c. 3915 [U. S. Comp. St. Supp. 1911, p. 1354]), with the exception that in the sixth subdivision of the state act the words "or if made to appear better or of greater value than it really is" are added.

In addition to the foregoing, the Oregon statutes contain a regulation for the labeling of baking powder before the same is sold within the state, as follows:

Sec. 2231. "It shall be unlawful for any person or persons, firm, or corporation, or their agents, to sell or offer for sale in the state of Oregon, any baking powder whether made within the state or without the state which does not have printed on the label in plain English, free from all technical or chemical phrases (unless accompanied by its English equivalents of the same import or meaning), the names of all the ingredients composing said baking powder."

The entire controversy under the pleadings hinges about the added clause, the proviso, and provision respecting the labeling of baking powder.

It is urged that Congress has by its legislation fully occupied and covered the field relative to the protection of the public against the adulteration or misbranding of articles of food, and therefore that the state

legislation, as it may affect foods dealt in in interstate commerce, is void and inoperative. This it is unnecessary to decide, for, in the view I take of the local act and the admitted facts, the complainant's product is not subject to the denunciation thereof.

It will be noted by a survey of the pleadings that it is denied by the answer that said baking powder is not adulterated, or is not misbranded, within the meaning of the Oregon food laws. The denial as to the adulteration, however, is accompanied by an affirmative allegation on the part of the defendant, which qualifies it, that the powder is adulterated by reason of its containing an infinitesimal portion of egg albumen. So in connection with the denial that the product is not misbranded, there is found in the complaint a reproduction of the label which constitutes the branding of the packages containing the product, and it is admitted that such is the label used.

Also, the denial of the allegation that said product is not made to appear better or of greater value than it really is must be construed with the qualification that it is so made to appear better and of greater value than it really is by the use in small proportions of the one ingredient of egg albumen.

[1] It is the cardinal purpose of these pure food statutes to protect the public against the imposition upon it of adulterated food products, and to prevent deception through misrepresentation by misbranding. The added clause under the Oregon statute is intended, no doubt, as a further safeguard against adulteration, and deception as to purity and quality.

Now, as it respects the adulteration of the complainant's baking powder, everything is conceded as to its genuineness and wholesomeness as an ingredient or article of food, as measured by the requirements of the pure food laws of Oregon. But it is urged that the presence of the egg albumen makes the compound appear better or of greater value than it really is. The question is: Does it do that? I think this is a question that may be determined on the record, without resort to testimony of experts or other persons. Admittedly, egg albumen is clean, wholesome, and nutritious, and its presence in the baking powder does not render the product any less wholesome, nor detract in any degree, even the slightest, from its quality as an ingredient or article of food; consequently, absolutely no harm can come therefrom to any person using the compound.

Referring to an affidavit of Dr. Harvey W. Wiley, which is contained in one of the briefs of counsel for defendant, we find this statement:

"Ordinary baking powders not containing albumen, when placed in a glass and treated with water, permit the reaction to take place between the acid element, whatever it may be, and the basic element, which is in all cases bicarbonate of soda. Carbon-dioxide which is liberated in this reaction escapes freely from the baking powder containing no egg albumen. On the other hand, in baking powders containing egg albumen a film of the albumen holds the bubbles of the carbon-dioxide, causing it to foam and fill the glass with a more or less permanent bubble.

"To the unscientific observer, this would indicate that the carbon-dioxide in the baking powder containing the egg albumen is more abundant and more serviceable than that in the powders not containing the albumen."

The test referred to in the statement is the water-glass test which was alluded to in argument. But note the statement relative to the indication by an application of the test to an unscientific observer. It is only in comparison with other baking powder not containing the egg albumen that the carbon-dioxide would appear more abundant and more serviceable. If all baking powder contained the egg albumen, could it be said that its effect was to make it appear better or of greater value than it really is? The carbon-dioxide is in the compound in any event, and the egg albumen affords a demonstration that it is there, while in other baking powders the demonstration is in the baking of the bread in which it is used. As said in the argument, the water-glass test is one that any one can make prior to using the baking powder, and thus determine at once its purity or staleness for use. The presence of the egg albumen becomes, therefore, a trade difference or distinction between Crescent Baking Powder and other baking powders in use, but it does not render the powder better or of greater value, nor does it make the same appear better or of greater value than it really is. The powder has the same leavening quality without the egg albumen as with it, and has the same quality with it as without it. The egg albumen only serves to demonstrate, in a ready, simple, inexpensive, and practical way, that the leavening quality is there, and the product has not become stale and unfit for use. The presence of the egg albumen, affording as it does a simple and practical test, may constitute a trade advantage, such as a trade-mark or trade-name may afford to those who acquire it, yet it is an advantage that legitimately belongs to the proprietor. Let it be emphasized that it is only in comparison with other baking powders that the presence of the albumen with the test makes the carbon-dioxide appear more abundant or more serviceable in the Crescent. It does not change in the least the inherent quality of the article, or its leavening power, for better or for worse, and hence it cannot be regarded as a deception or a fraud in any degree.

I hold, therefore, that, within the intendment of the statute, the presence of the egg albumen does not make the Crescent Baking Powder appear better or of greater value than it really is.

This renders it unnecessary to consider whether Crescent Baking Powder is a compound under its own distinctive name, and subject to exemption contained in the latter clause of section 4831 quoted above, or its amendment.

As to the labeling, there may be a question whether, as applied to interstate commerce, the Oregon statute pertaining to baking powder is not inimical to the federal Constitution. McDermott v. Wisconsin, supra. I waive this also without deciding.

[2] But the label adopted is not subject to the denunciation of the Oregon statute. The ingredients of the compound are bicarbonate of soda, calcium acid phosphate, sodium aluminium sulphate, egg albumen and corn starch. The label contains this legend:

"This Baking Powder contains the following ingredients and none other: Starch, Egg, Phosphate, Bicarb. Soda, Sodium Aluminium Sulphate."

It would be sticking in the bark to hold that this is not a substantial compliance with the statute. Any one who is acquainted with the English language will readily be apprised of the ingredients composing the article offered for sale.

Complainant is entitled to a decree permanently enjoining the defendant from issuing his proposed ruling or order inhibiting the sale by complainant of Crescent Baking Powder in Oregon, and it is so ordered.