BARTELS NORTHERN OIL COMPANY v. T. W. JACKMAN as State Inspector of Oils for the State of North Dakota.

(150 N. W. 576.)

Injunction — test validity of statute — lawfulness of powers conferred on public officers.

1. When other conditions warrant it, injunction will lie to test the validity of a statute or the lawfulness of the exercise of the powers conferred upon an officer of the law charged with executing it.

"Officers of the law" — peace officers.

2. The term "officers of the law," employed in subdiv. 4, § 7214, Comp. Laws 1913, is synonymous with "peace officers."

Federal Constitution — State officers — suits against — State courts — State has no power to prohibit suits.

3. Provisions of the Federal Constitution cannot be nullified by the state prohibiting suits in its own courts against state officers to prevent their enforcing unconstitutional statutes.

State oil inspector — oil in transit from other states — inspection — fees for — nonpayment — excessive — remedy.

4. Injunction will lie to prevent the state oil inspector and his deputies from holding up oil in transit from other states into this state, for nonpayment of inspection fees, if such fees are materially in excess of the amount necessary to pay the expense of inspection, when none of the ordinary actions at law would furnish an adequate or complete remedy for the damages which could be sustained by the plaintiff.

Action for conversion — claim and delivery — damages — inadequate remedies.

5. Where the plaintiff is receiving almost daily shipments of oil and gasolene, and is selling the same to consumers, and must depend on such shipments to supply his customers, and they are unlawfully held up by the oil inspector, neither an action for conversion, claim and delivery nor for damages, furnishes an adequate remedy for the injury to his property and business.

Courts — equity — law — jurisdiction.

6. When courts of law and equity were separate and distinct courts, neither one had jurisdiction over subjects within the jurisdiction of the other; but in this state the same court has jurisdiction of proceedings in both law and equity, and it is not necessary to as clearly and completely differentiate between the two as formerly.

Prevention of unlawful act — action by injunction — favored.

7. Unless clearly prevented by constitutional or statutory provisions, proceedings which will prevent an evil should be favored, rather than to compel a party to wait until the wrong has been done, and then to seek a remedy by action for the damages occasioned thereby.

Continuous wrongs — injunction — compensation.

8. Although a legal remedy may be adequate for any single act of trespass or any single wrong, yet when such acts or wrongs are continuous in their nature, and the entire wrong may be prevented by injunction, that form of proceeding is preferable to one at law, because full compensation for the entire wrong cannot be obtained in one action at law.

**Irreparable injury — ground for injunction — meaning of term — adequate compensation — measure of damages.**

9. Irreparable injury, in the sense that it furnishes a ground for the issuance of an injunction, does not mean that the injury is beyond the possibility of repair or compensation for damages, but rather that it is of such constant and frequent recurrence that the injured party cannot be adequately compensated for damages, or that the damages resulting cannot be measured by any certain pecuniary standard, but only by conjecture.

**Inspection of commodities during transit — Legislative provision for — fees for — costs of inspection — limited to — when greater, a revenue measure — Federal Constitution — commerce provisions.**

10. When the legislature provides for the inspection of commodities during transit, brought from other states into North Dakota, and fixes the fee for such inspection materially greater than the cost thereof, the measure becomes not only a police measure, but also a revenue measure; and to the extent that the fees exceed the reasonably necessary cost of inspection the tax is invalid as in conflict with the commerce provisions of the Federal Constitution.

**United States Supreme Court decisions — control state courts — same questions — taxes — police measure.**

11. The decisions of the Supreme Court of the United States on Federal questions are absolutely controlling, when the same questions are presented in state courts, and the latter have no alternative but to follow the Federal authorities. In D. E. Foote & Co. v. Stanley, 232 U. S. 494, the Supreme Court of the United States had under consideration the validity of a tax provided by a police inspection law of the state of Maryland. The facts and principles were in all respects identical with those in the case at bar, except that the revenue derived from the inspection fee was less in proportion to the cost of inspection than under the law which we are considering. The Supreme Court of the United States held the tax or inspection fee invalid. This decision is controlling, and must be followed by the courts of this state.

**Excessive fee for inspection — tax on property — revenue measure — not uniform.**

12. If on proof the allegations of the complaint in the case at bar, with reference to the excessiveness of the fee charged for inspecting oil and gasolene, are found correct, such fee is a tax on proprty, not according to its true value in money, and to the extent that it exceeds the cost of inspection is a revenue, measure, and in conflict with § 176 of the Constitution, which provides that laws shall be passed taxing by uniform rule all property according to its true value in money. See Malin v. Lamoure County, 27 N. D. 140.

**Injunction — motion to vacate — discretion.**

13. It is *held* that the district court did not abuse its discretion in denying

the motion to vacate the temporary injunction, granted at the beginning of this action.

Opinion filed January 7, 1915.

Appeal from orders of the District Court of Grand Forks County; *Honorable Chas. M. Cooley*, J.

Affirmed.

Statement by SPALDING, Ch. J.

A synopsis of the allegations of the complaint of the respondents in this case shows them to be to the effect that the plaintiff is a domestic corporation doing business in this state in the sale of oils from six different plants located in different counties, with its principal place of business at Grand Forks; that by chap. 214 of the Laws of 1913, a process and proceedings for the inspection of refined petroleum oils and gasolenes were provided, and a state inspector of oils created to make inspection of all oils and gasolene coming within the state, and requiring him to collect fees aggregating ½ cent per gallon, and making such fees a charge against the person, firm, or corporation shipping such oils into the state. It is alleged that the plaintiff handles large quantities of such oils; that the inspection fees for which it is responsible to the inspector or state under said law, if legal, aggregate from $100 to $500 per month; that such fee is largely in excess of the amount reasonably necessary for the payment of the expenses of the enforcement of the inspection law referred to; that the cost of inspection of such oils under said law runs from $10,000 to $12,000 per year, while the receipts from such inspection fees aggregate from $80,000 to $100,000 per annum; that all oils which are or have been inspected by said inspector are interstate shipments of oils; that no oils are produced in the state for such inspection; that the exorbitant charge is a direct attempt on the part of the state to levy and impose a tax upon property which is the subject of interstate commerce, and is an interference with interstate commerce, and an unlawfully imposed duty upon goods shipped into the state from other states. It is further alleged that said chapter 214 is to a greater or less extent a re-enactment of chapter 171 of the Laws of 1909, and that the fee charged is identical; that under the provisions of said chapter 171, which had been in effect about four years at the time of

the enactment of said chapter 214, from $60,000 to $100,000 per year had been received by the oil inspection department for such inspections over and above the amount expended in the enforcement of such law; that the legislature had, at the time that said chapter 214 was passed, full knowledge of the fact that said inspection fee was greatly in excess of the amount necessary for the carrying into effect of the law, and had notice and knowledge that the law, which had been in effect nearly four years theretofore, had produced revenues far in excess of the amount necessary for use in the inspection of oils and the enforcement of said law; that the same was fully explained to the committee of the legislature having the measure in charge, and was well known to the whole legislature, but that the legislature for the year 1911, by chapter 198, made provision for transferring such excess to the general fund of the state. It is then alleged that such charge is in conflict with the Constitution of the state and the Constitution of the United States, and that it is not a bona fide inspection law; that the excess which is transferred to the general fund of the state is not used in any manner which will particularly benefit persons required to pay the inspection fees. Plaintiff also alleges that it buys from day to day, and has placed in its storage tanks, at its several places of business in the state of North Dakota, large quantities of kerosene, gasolene and other oils, and from such tanks furnishes the same directly to the consumer; that the inspector has notified plaintiff of his intention to hold, and he is holding, all shipments of oils and gasolene made to plaintiff, as security for the payment of about $400 or $500 of inspection fees, which plaintiff has refused to pay, and that he refuses to deliver such oil shipped to this plaintiff to plaintiff or its order until all such fees, which are charged against this plaintiff, have been by it paid, in addition to whatever may become due upon the oil so held by him; that by reason of such facts the business of plaintiff is being interfered with, and, unless the inspector is restrained from taking any such action, plaintiff will be unable to obtain any oil for the purpose of supplying its trade and its patrons, and that thereby its business will be damaged and it will suffer irreparable injury. It is further alleged that there is no provision of law or otherwise whereby it can obtain possession of such oil without the pay-

ment of such excessive tax, and that it has no adequate remedy at law
or otherwise by which it can protect itself against such imposition,
other than by making this application. Injunctive relief is prayed
for, and a restraining order asked during the pendency of the action.
A restraining order was granted *ex parte,* restraining the inspector from
holding up or interfering with the shipment of any petroleum oils or
gasolenes to plaintiff during the pendency of the action. On the 3d
day of September, 1914, the attorney general demurred to the complaint
upon the grounds that it did not state facts sufficient to entitle plain-
tiff to a temporary or any other restraining order, and on the ground,
among others, that it attempts to restrain a public officer of the state
from performing his official duties, and that plaintiff has a speedy and
adequate remedy at law. This motion was argued and denied, and on
the direction of the court a new and increased undertaking was given
by the plaintiff to protect the state. The court overruled the demurrer
of the state, and separate appeals were taken from the order refusing
to dissolve the restraining order, and from the order overruling the
demurrer. They are argued together in this court.

We will first consider the appeal from the order overruling the
demurrer. The oil inspection law, being chap. 214, Laws of 1913,
covers eleven printed pages, and we need not consider its provisions
in detail. As far as material to an understanding of this decision,
it provides: (1) For the appointment of a person to be known as
oil inspector, and for his appointing deputies at all points designated
as ports of entry; (2) they are given the right, and it is made their
duty, to enter into and upon the premises of any manufacturer, dealer,
or vendor of refined petroleum oils or gasolene, at any time and in-
spect any books or papers of such persons, or of transportation compa-
nies, pertaining to the shipment of oils or gasolene, also all receptacles
for the same; (3) the salary of the inspector is fixed at $2,500 per
year, and that of deputies at ports of entry, where the total number
of barrels inspected is in excess of 8,000, $50 per month, where in
excess of 15,000 per annum, $75 per month, where in excess of 25,000
per month, $125 per month, and for other deputies salaries not less
than $10 or more than $30 per month, according to the judgment of
the inspector; (4) a report to the auditor is required of the inspec-

tions made on or before the 5th of each month, and the auditor furnishes the state treasurer with a summary of fees due and the names and addresses of consignors and the amount of fees, on or before the 10th of each month, whereupon the treasurer notifies the inspector of the name and address of any person, firm, or corporation failing to pay the fees provided, and it is made the duty *of the state inspector or his deputies, on receipt of such notice, to hold any and all future shipments of petroleum, illuminating oils, gasolenes, or other petroleum products, consigned by any such person, firm, or corporation, until all delinquent fees have been paid;* (5) the fees provided are required to be paid directly to the state treasurer on or before the 15th of each calendar month; (6) shippers of oil into the state are required to execute a bond to the state, in the penal sum of $500 or more, to insure the payment of inspection fees; (7) the inspector is required to provide and furnish apparatus for making tests, and is authorized to pay the necessary travel and other expenses of the department; (8) all illuminating oils, the products of petroleum or into which petroleum or any product of petroleum enters, whether manufactured in this state or not, are required to be inspected before being sold or offered for sale or used for illuminating purposes; gasolenes are also provided to be inspected, and the character of the test is prescribed for each, as well as brands for marking the containers; a form of certificate is provided and penalties affixed for sale of products not tested; (9) the inspector is required to give each transportation company whose lines enter the state, and the state auditor, a list of the ports of entry created from time to time, together with the names of the deputies at each port; (10) each such transportation company is required to stop and hold for inspection at ports of entry all consignments of such goods; (11) a fee of 25 cents for testing each barrel of 50 gallons or less is required to be paid by the consignor; (12) it is made the duty of the state's attorneys of the respective counties to prosecute violations of the act; (13) for making inspection other than at ports of entry the inspector and deputies are entitled, in addition to the fees prescribed, to their actual traveling expenses, to be paid by the consignor. Chap. 171, Laws of 1909, was a similar law, differing in details, but providing the same fees for inspection. Said chapter was repealed by the act in question.

*Hon. Andrew Miller,* Attorney General, *Alfred Zuger* and *John Carmody,* Assistant Attorneys General, for appellant.

An attempt to enjoin the execution of a public statute for a public benefit by officers of the law will not be allowed, or where the party has an adequate remedy at law.   Franklin v. Appel, 10 S. D. 391, 73 N. W. 259; State ex rel. Kenamore v. Wood, 155 Mo. 425, 48 L.R.A. 596, 56 S. W. 474; 22 Cyc. 769; 16 Am. & Eng. Enc. Law, 2d ed. 352; De Witt v. Hays, 2 Cal. 463, 56 Am. Dec. 352; Robinson v. Gaar, 6 Cal. 274; Trinity County v. McCammon, 25 Cal. 117; Hager v. Shindler, 29 Cal. 48; Bucknall v. Story, 36 Cal. 67; United Lines Teleg. Co. v. Grant, 137 N. Y. 7, 32 N. E. 1005; Richards v. Kirkpatrick, 53 Cal. 433; Birmingham v. Cheetham, 19 Wash. 657, 54 Pac. 37; Gibbs v. Green, 54 Miss. 592; High, Inj. 4th ed. § 1326; Youngblood v. Sexton, 32 Mich. 406, 20 Am. Rep. 654; Kellett v. Ida Clayton & G. W. Wagon Road Co. 90 Cal. 210, 33 Pac. 885.

Where there exists an adequate and speedy remedy at law, injunction will not lie.   22 Cyc. 769; 16 Am. & Eng. Enc. Law, 352.

This is a personal tax purely.   Equity has no jurisdiction to restrain the collection of a personal tax, even though the tax be illegal.   Williams v. Detroit, 2 Mich. 560; Henry v. Gregory, 29 Mich. 68; Heywood v. Buffalo, 14 N. Y. 534; Kellett v. Ida Clayton & G. W. Wagon Road Co. 90 Cal. 210, 33 Pac. 885; State ex rel. Kenamore v. Wood, 155 Mo. 425, 48 L.R.A. 596, 56 S. W. 474; People ex rel. Atty. Gen. v. Shasta County, 75 Cal. 181, 16 Pac. 776; Merriam v. Yuba County Supers. 72 Cal. 517, 14 Pac. 137; Wynn v. Shaw, — Cal. —, 25 Pac. 244; 27 Century Dig. 1778–1783.

The complaint contains no averments which would authorize equitable relief.   Burton v. Walker, 13 N. D. 149, 100 N. W. 257; General Oil Co. v. Crain, 209 U. S. 211, 229–231, 52 L. ed. 754–766, 28 Sup. Ct. Rep. 475.

*Frank B. Feetham,* for respondent.

The constitutionality of the law in question is clearly raised by the defendant's motion to vacate the injunction.   If the oil inspection law is constitutional, the order was improvidently issued; if not, the order should be upheld and the injunction continued.   Turner v. Maryland, 107 U. S. 38, 27 L. ed. 370, 2 Sup. Ct. Rep. 44; D. E. Foote & Co. v. Stanley, 232 U. S. 494, 58 L. ed. 698, 34 Sup. Ct. Rep. 377.

The fees provided for and charged under the oil inspection law are excessive, and in reality amount to a tax. As a tax, they are void because not imposed by uniform rule according to true value in money. Malin v. Lamoure County, 27 N. D. 140, 50 L.R.A.(N.S.) 997, 145 N. W. 582.

Injunction is the only effective remedy by which a "public officer" may be prevented from the performance of an act essentially wrong, and by which the law governing such act may be tested. There is no other plain, speedy, or adequate remedy. State v. Collins, 12 R. I. 478; Gordon v. State , 2 Tex. App. 158; 6 Words & Phrases, p. 4951; State ex rel. Ladd v. District Ct. 17 N. D. 285, 15 L.R.A.(N.S.) 331, 115 N. W. 675.

An unconstitutional legislative act is no law. It is void from the beginning, and a "public officer" who undertakes to carry out and enforce its provisions may be stopped by injunction. State ex rel. Atty. Gen. v. Cunningham, 81 Wis. 440, 15 L.R.A. 561, 51 N. W. 724.

Such a public official as an oil inspector is not in that class of "officers of the law" who may not be enjoined. Osborn v. Bank of United States, 9 Wheat. 738, 6 L. ed. 204.

An officer of the state may be enjoined from executing a statute of the state which is in conflict with the Constitution of the United States, when such execution would violate rights and privileges of the complainant, guaranteed to him by the Constitution. Osborn v. Bank of United States, 9 Wheat. 859, 6 L. ed. 233; Pennoyer v. McConnaughy, 140 U. S. 363, 35 L. ed. 363, 11 Sup. Ct. Rep. 701; Board of Liquidation v. McComb, 92 U. S. 531, 23 L. ed. 623; Davis v. Gray, 16 Wall. 220, 21 L. ed. 453; Ex parte Young, 209 U. S. 123, 52 L. ed. 714, 13 L.R.A.(N.S.) 932, 28 Sup. Ct. Rep. 441, 14 Ann. Cas. 764; Minneapolis Brewing Co. v. McGillivray, 104 Fed. 258; McConnell v. Arkansas Brick & Mfg. Co. 70 Ark. 568, 69 S. W. 559; Chesapeake & O. R. Co. v. Miller, 19 W. Va. 408; Starr v. Chicago, R. I. & P. R. Co. 110 Fed. 3.

A remedy at law is not, of itself, a bar to an action for injunction. The remedy must be speedy, plain, and adequate, to furnish proper relief for the complainant. The test is, What remedy will prevent and preclude the commission of a wrong, will cause correct, legal, and

proper action in the quickest and easiest manner? Pom. Eq. Jur. 3d ed. §§ 1356, 1357.

In many cases—in fact in the case at bar—the fact that a legal remedy will give damages for a wrong act affords no reason for denying the right to injunction, especially where the act or acts of which complaint is made are of a continuing nature. Note to § 1357, Pom. Eq. Jur. 3d ed. and cases cited; 22 Cyc. 771; Watson v. Sutherland, 5 Wall. 74, 18 L. ed. 581; Boyce v. Grundy, 3 Pet. 210, 7 L. ed. 655; Corning v. Troy Iron & Nail Factory, 39 Barb. 311, 40 N. Y. 206; Sumner v. Crawford, 91 Tex. 129, 41 S. W. 994; Denny v. Denny, 113 Ind. 22, 14 N. E. 593; Bishop v. Moorman, 98 Ind. 1, 49 Am. Rep. 731.

That remedy which prevents a threatened wrong is far greater and more efficient than a remedy which permits the wrong to be done, and then directs the injured party to seek his redress in a court of law in the form of damages. There are wrongs for which pecuniary damages afford no adequate relief. 3 Pom. Eq. Jur. § 1357; Champ v. Kendrick, 130 Ind. 549, 30 N. E. 788; Xenia Real Estate Co. v. Macy, 147 Ind. 568, 47 N. E. 148; Wilcox v. Wheeler, 47 N. H. 493; Niagara Falls International Bridge Co. v. Great Western R. Co. 39 Barb. 224; Clark v. Jeffersonville, M. & I. R. Co. 44 Ind. 261.

SPALDING, Ch. J. (after stating the facts as above). The attorney general, for the purposes of this decision only, admits the unconstitutionality of the law, and contends that the court has no jurisdiction of the subject of this action. The first ground for this contention is that it is an attempt to enjoin the execution of a public statute by officers of the law for the public benefit.

1. Assuming that the respondent has no adequate remedy at law, a suit for an injunction will lie to test the validity of a statute or the lawfulness of the exercise of the powers conferred upon the officer charged with executing it; and we are of the opinion that subdiv. 4, § 7214, Comp. Laws 1913, which provides that injunction will not be granted to prevent the execution of a public statute by officers of the law for the public benefit, cannot be made to apply in any event to this statute. It will be noted that it is "officers of the law" who under that section cannot be enjoined. There are authorities defining "officer

of the law," and there seems to be a clear distinction between an officer of the law and a public officer, an officer of the law being defined as synonymous with peace officer, referring only to judges, justices, sheriffs, and constables. See authorities cited in 6 Words & Phrases, 4951. This conclusion is supported by an inspection of Field's Civil Code, which furnishes the basis of our Code. In Field's Code the term used is, "nor to prevent the execution of any statute in this state, nor the exercise of any public office." We are disposed to hold that a change in the phrase was made in recognition of a distinction between a public officer and an officer of the law, and to enlarge the function of the remedy by injunction. This court, however, without having this distinction called to its attention, has passed upon the principle involved in this objection, in State ex rel. Ladd v. District Ct. 17 N. D. 285, 15 L.R.A.(N.S.) 331, 115 N. W. 675, where it was held that the legality of the acts of the pure food commissioner might be tested in an action to enjoin him, and not to preclude an inquiry by the courts into the legality of official acts of such officer in such suit. There is, however, another, and if possible a stronger reason why this prohibition is not applicable in the instant case. It is contended that this law is in violation of the commerce provisions of the Federal Constitution. A Federal question is therefore involved. In the determination of such question, which we shall later examine, decisions of the Supreme Court of the United States are controlling where that court has expressly passed upon the same question, and this court has no alternative, but must follow the decisions of the highest court of the land. In General Oil Co. v. Crain, 209 U. S. 211, 52 L. ed. 754, 28 Sup. Ct. Rep. 475, this same argument was advanced. The statute of Tennessee, construed in that case, provided that "no court in the state of Tennessee has, nor shall [it] hereafter have, any power, jurisdiction, or authority to entertain any suit against the state or any officer acting by the authority of the state, with a view to reach the state, its treasury, funds, or property. . . ." And it was held that provisions of the Federal Constitution and Amendments could not be nullified by the state prohibiting suits in its own courts against state officers to prevent their enforcing unconstitutional statutes. See also Pennoyer v. McConnaughy, 140 U. S. 1, 35 L. ed. 363, 11 Sup. Ct. Rep. 701; Board of Liquidation v. McComb, 92 U. S. 531, 23 L. ed.

623; Osborn v. Bank of United States, 9 Wheat. 859, 6 L. ed. 233; Minneapolis Brewing Co. v. McGillivray, 104 Fed. 272.

Referring to actions in our own courts again, and without citing specific cases, it is well known to the profession that the courts have entertained and sustained from the very beginning suits to enjoin the execution of state laws, not only because claimed to be unconstitutional, but for many other reasons. On of the most important cases of this character was State ex rel. Rusk v. Budge, 14 N. D. 582, 105 N. W. 724, wherein it was sought to enjoin the defendants, as members of the Board of State Capitol Commissioners, from building a new state capitol, on the ground that the law establishing such commission and authorizing the construction of a new capitol was unconstitutional. Dismissing this point with this brief discussion, we hold it not well taken, and that a suit for injunction may be entertained when in other respects the complaint states a cause of action, having for its purpose the enjoining of officers of the law from executing an unconstitutional act of the legislature, or to determine whether an act is valid.

2. It is next urged that the complaint is insufficient to give the court jurisdiction, because the plaintiff has a plain, speedy, and adequate remedy at law, and that irreparable injury to the respondent is not shown.

(a) It is stated that "the plaintiff has a complete remedy at law, either by an action of conversion or claim and delivery or for damages, and it is argued that, if the law is invalid, the inspector and his deputies are trespassers, and liable as such to the plaintiff for damages it may sustain." The allegations of the complaint are sufficient to show that it is doing a continuous business; that it is constantly receiving and selling oil or products of petroleum. The statute requires the inspector to hold at the port of entry shipments for nonpayment of fees. It needs no discussion to show that, should an action for conversion be brought against the inspector or deputy on one shipment of the commodity, it would furnish no protection on the next and succeeding shipments. The same would be true if the remedy by claim and delivery were invoked, or actions for damages. The remedy by law must not only be adequate, but it must be plain and speedy. Authorities are cited by defendant to sustain his position, but an inspection discloses that such authorities involve facts materially different from

those pleaded in the case at bar. They were where one act only was in question, instead of a succession of acts. It appears reasonably clear that in the case at bar injunction is much more prompt and efficient than either of the legal remedies suggested, that in fact none of those named would be adequate to meet the dangers sought to be guarded against. In Corning v. Troy Iron & Nail Factory, 39 Barb. 311, the court, in passing upon an injunction sought against trespass on a running stream, says: "It is said that equity will not grant an injunction if there is an ample remedy at law. I think the rule, according to the modern decisions, is subject to some qualification; but, assuming its entire correctness, is it true that here is an ample remedy at law? It is said an action at law lies to recover the damages. . . . [if so] such actions may be indefinitely repeated, and each successive day may witness the commencement of a new one;" and the court sustained the injunction, and in affirming the decision the court of appeals in 40 N. Y. 206, said: "If equity refuses its aid, the only remedy of the plaintiffs, whose rights have been established, will be to commence suits from day to day, and thus endeavor to make it for the interest of the defendant to do justice by restoring the stream to its channel. If the plaintiffs have no other means of recovering their rights, there is a great defect in jurisprudence. But there is no such defect. The right of the plaintiffs to the equitable relief sought is established by authority as well as principle." Many authorities are to the same effect, and see Sumner v. Crawford, 91 Tex. 129, 41 S. W. 994; Denny v. Denny, 113 Ind. 22, 14 N. E. 593; Champ v. Kendrick, 130 Ind. 549, 30 N. E. 788. The law is in a measure a progressive science, although not an exact one. When courts of law and equity were separate and distinct courts, there was very strong reason for a close distinction between actions at law and suits in equity. Neither court had jurisdiction over the other subject. But since the abrogation, in most states, of forms of action, and jurisdiction being granted in both classes of cases to the same court, it is not necessary to as clearly and completely distinguish between the two as formerly, although care must, of course, still be taken not to invade the right to trial by jury. It is universally coming to be recognized in other subjects that "an ounce of prevention is worth a pound of cure." Why should not this apply with equal force to the law? And, unless required

by constitutional or statutory provisions to adopt and follow a specified course of action, such proceedings as will prevent the evil should be favored, rather than to permit the damage to be done, and then seek a subsequent remedy by action for damages or some corresponding course. In line with this it is said in 4 Pomeroy's Equity Jurisprudence, §§ 1356, 1357, that "if the trespass is continuous in its nature, if repeated acts of wrong are done or threatened, although each of these acts taken by itself may not be destructive, and the legal remedy may therefore be adequate for each single act if it stood alone, then, also, the entire wrong will be prevented or stopped by injunction on the ground of avoiding a repetition of similar actions. . . . The injunction is granted, not merely because the injury is essentially destructive, but because, being continuous or repeated, the full compensation for the entire wrong cannot be obtained in one action at law for damages. . . . The ideal remedy in any perfect system of administering justice would be that which absolutely precludes the commission of a wrong, not that which awards punishment or satisfaction for a wrong . . . committed." See also Watson v. Sutherland, 5 Wall. 74, 18 L. ed. 581. We are satisfied that neither of the forms of law action suggested would furnish an adequate remedy for the wrong committed by the defendant in obeying the law, and holding successive shipments of products of petroleum consigned to the plaintiff, if the law in question is invalid, and that therefore injunction, so far as this objection is concerned, is a proper proceeding to test the question.

(c) It is next urged that irreparable injury to plaintiff is not disclosed by the complaint. The allegations of the complaint in this regard do not seem to us as complete as they might have been made, but we are satisfied that they state enough to inform the court of the character of the threatened injury which plaintiff seeks to guard against, and warrant it in holding that it is irreparable in a legal sense. Irreparable injury in the sense that it furnishes a ground for the issuance of an injunction does not mean that the injury is beyond the possibility of repair or of compensation for damages, but rather that it must be of such constant and frequent recurrence that the injured party cannot be adequately compensated for any damages, or when the damages which may result therefrom cannot be measured by any certain pecuniary standard, but only by conjecture. Eau Claire Water Co. v. Eau Claire,

127 Wis. 154, 106 N. W. 679; Columbia College v. Tunberg, 64 Wash. 19, 116 Pac. 280; Donovan v. Pennsylvania Co. 199 U. S. 279, 50 L. ed. 192, 26 Sup. Ct. Rep. 91; Heine v. Roth, 2 Alaska, 416. For variations of this definition see 2 Words & Phrases, 1206. The complaint in the case at bar states facts indicating with sufficient minuteness that the business of the plaintiff would suffer irreparable injury if it were required to resort to either of the legal remedies suggested. It is constantly receiving at its different stations shipments of petroleum products, and as constantly disposing of them to its customers. The consumption of such products in this state is enormous, and it is evident that the stoppage of the receipts of the plaintiff would of necessity cause a discontinuance of its sales, work a loss of customers and business, that its customers would be driven to patronize other dealers immediately on the supply in any one of plaintiff's stations being exhausted. For this injury an action at law would furnish no adequate remedy, and the injury would be irreparable in the same sense. Injury would occur to the business of the plaintiff, and lessen the value of its franchise. This character of injury is within the contemplation of the law regarding irreparable injury. See State ex rel. Ladd v. District Ct. 17 N. D. 285, 15 L.R.A.(N.S.) 331, 115 N. W. 675. As a result of the foregoing considerations we conclude that the district court had jurisdiction of the subject of the action in the case at bar.

3. In view of the attitude of the state upon argument we shall not devote much space to a consideration of the validity of the tax. In many cases that question may be determined by an inspection of the statute itself, but in other classes of cases,—and among them falls this case,—it must be determined by the practical workings of the law. This has been so in several cases decided by this court, and among them the coal rate cases. When those cases first went to the Supreme Court of the United States that court declined to fully pass upon the question, because the law had not been in operation long enough to demonstrate its validity or invalidity, and it was remanded to this court, with leave to the plaintiffs to have the case reopened and take further testimony when the law had been in operation a sufficient time to demonstrate its effect. See Northern P. R. Co. v. North Dakota, 216 U. S. 579, 54 L. ed. 624, 30 Sup. Ct. Rep. 423. We shall not, however, determine the validity or legality of this fee on the pleadings alone. We think

that, if the allegations of the complaint are proved by evidence on trial, the fee is invalid, that is, whenever the fees are to any considerable extent in excess of the expenses of administering the law. At such time the statute becomes not simply an inspection measure, but also a revenue law, and the legislature, as alleged in the complaint, intended it to be such. Our discussion of the constitutional question is on the assumption only that the allegations of the complaint regarding the relative amount of expenses and fees are borne out on trial, and is for the guidance of the trial court in case the allegations of the complaint are put in issue. The Federal decisions on this question appear to have been somewhat conflicting, but no longer ago than February 24, 1914, the question was settled by the Supreme Court of the United States in a case in every respect on principle like the one before us. The facts were the same, except as to the subject of the inspection.

In D. E. Foote & Co. v. Stanley, 232 U. S. 494, 58 L. ed. 698, 34 Sup. Ct. Rep. 377, the Supreme Court of the United States reversed the supreme court of Maryland, and held the fee provided by an oyster inspection law void,—in conflict with the provisions of the Federal Constitution. The facts, so far as material to the case before this court, were as follows: Plaintiffs were engaged in packing oysters, which were taken from the waters of Virginia and New Jersey, as well as from Maryland, and shipped to Baltimore. The oysters were unloaded from vessels in Baltimore, where they were inspected and then distributed to customers of the plaintiff. A fee of 1 cent per bushel was imposed for inspection. The facts were stipulated, and showed that the salaries of the inspectors amounted to about $14,000 per annum, and that the total receipts from the fees were something over $43,000 per annum, leaving a surplus or excess of between $28,000 and $29,000. Under the law the surplus was used for keeping and maintaining sufficient police regulation for the protection of fish and oysters in Maryland waters, and the payment of the officers and men, and keeping in repair and supplying the necessary means of sailing the boats and vessels of the state fishery force. This law was enacted in 1910, and prior to its enactment a similar law had been in force on the subject, providing the same fee for inspection, and the court had before it, as in the case at bar, the knowledge of the receipts and expenditures under the preceding law. The Supreme Court held that

there was a difference between policing and inspection, that while the two duties might sometimes overlap, if the state imposed upon one set of officers the performance of the two duties, and paid the whole or a part of the joint expenses out of inspection fees, it must be made to appear that the tax did not materially exceed the cost of inspection, and that the burden in such was on those seeking to collect the combined charge, because if the cost of inspection was so intermingled with other charges as to make it impossible to separate the two, interstate commerce might be burdened by fees collected both for inspection and revenue,—for a lawful and for an unlawful purpose. In the case at bar the excess over the cost of inspection goes into the general fund of the state treasury, and is appropriated by the legislature to pay the general expenses of government, the same as are funds derived from general taxation. The only difference in this respect between our statute and the Maryland statute is that under the latter the excess was applied to a definite purpose more nearly related to the oyster industry than the excess in our own case is to the oil industry. The court also held that, if the fees exceeded the cost by a sum not unreasonable, no question could arise as to the validity of the tax, so far as the amount of the charge was concerned; that, even if this appeared, courts would not immediately interfere, because the presumption was that the legislature would reduce the fees to a proper sum. It then says,—and this is literally applicable to the case before this court, because of the former law in the case having provided the same fee,—"But when the facts show that what was known to be an unnecessary amount has been levied, or what has proved to be an unreasonable charge is continued, then we are obliged to act in the light of those facts, and to give effect to the provisions of the Constitution prohibiting the collection by a state of more than is necessary for executing its inspection laws;" and the courts will not enter into any nice calculation as to the difference between cost and collection, nor will they declare the fees to be excessive unless made clearly to appear that they are obviously and largely beyond what is needed for the inspection services rendered, but, on the contrary, it was held that if it was shown that the fees were disproportionate to the service rendered, or that they included the cost of something beyond legitimate inspection to determine quality and condition, the tax must be declared void, because such costs, by neces-

sary operation, obstruct the freedom of commerce among the states; and it was held that the act included the cost of something beyond legitimate inspection; it held also that "the question of reasonableness of the fee may be considered in the light of the practical operation of the law, with a view to determining with reasonable certainty the permanent relation between the amount collected and the cost of inspection;" and that the tax was void as a burden on interstate commerce, when levied upon oysters coming from other states. As we have before said, we have no discretion on this phase of the case. The foregoing authority is the last word by the Supreme Court of the United States on the subject, and is absolutely controlling on the question before us. We must therefore hold that, if the facts alleged in the complaint, and which were only admitted as true for the purpose of determining the demurrer interposed by the state, are shown to be substantially true, or that the amount collected in fees is largely in excess of the necessary expenses of making inspections, the tax is invalid.

The state cites and relies upon General Oil Co. v. Crain, decided by the Supreme Court of the United States in 1908, and found in 209 U. S. 211, 52 L. ed. 754, 28 Sup. Ct. Rep. 475. On first inspection the facts in that case seem to make it an authority, but on close reading it appears that the inspection fee there held valid only related to the inspection of oil shipped into the state and afterward commingled with the general property of the state: that is, it was shipped in, unloaded, and placed at rest, perhaps to be thereafter shipped out of the state, but it was held that, in view of its being placed at rest in the state and the inspection being thereafter made, it had ceased to be an interstate commodity, and that the provisions of the Federal Constitution were not applicable.

If, however, the Crain Case would otherwise be an authority, it must be considered as superseded by the Foote Case, from which we have quoted, which stands as the law applicable until overruled by the same court. Many authorities are cited from state courts, some apparently sustaining the state's contention, although most of those appearing to be directly in point contain very brief discussions of the subject, and the fee was much smaller. And all were decided prior to the decision of D. E. Foote & Co. v. Stanley, supra, hence in so far as they are in conflict with that authority, are of no force or weight.

4. It is also contended by respondent that the provisions fixing the amount of the fee are in conflict with various sections of the state Constitution, and particularly with § 176, which provides that laws shall be passed taxing by uniform rule all property according to its true value in money. We need not dwell upon this point, because if the evidence adduced on trial sustains the allegations of the complaint as to the relative amount of fees and expenses, it is a revenue measure, and comes within the terms of the decision recently made by this court in Malin v. Lamoure County, 27 N. D. 140, 50 L.R.A.(N.S.) 997, 145 N. W. 582, where this subject was fully considered.

5. With reference to the preliminary injunction granted at the beginning of this litigation without notice to the state, we find that no question is before us on that order prior to the hearing of a motion to dissolve such restraining order. This motion was made and heard shortly after the initiation of this litigation, on the complaint, and on the same objections which we have considered above. The state submitted no affidavits, but stood upon the naked legal propositions which we have decided. The application for the temporary restraining order was supported by the affidavit of Charles Bartels, manager of the plaintiff, wherein he restated most of the allegations contained in the complaint, and also that it was necessary to have delivered to plaintiff the oils and gasolenes shipped, from time to time, from points without the state, and that there was then in transit, billed to it, a number of cars of such oils and gasolenes, which were being held by the defendant in his official capacity as state oil inspector, under the provisions of the inspection law of 1913; that its business was continuous; that it was absolutely necessary for the protection of its interests that no interference be made by defendant with its receipts of such oils and gasolenes shipped to it from time to time; that he had been notified as manager of the plaintiff that it was the intention of the inspector to hold any and all such oils then or thereafter shipped to it, and not deliver the same to plaintiff, or permit them to be delivered, without the payment of all delinquent fees for inspection; that if such course were permitted, its business would be interrupted, its proceeds depleted, and that it would suffer irreparable injury. Plaintiff tendered to the oil inspector an undertaking in due form to protect the state and insure the payment of any and all fees, together with costs

and disbursements for which the court might find plaintiff liable. It is well established that the granting or refusing of a temporary restraining order in such cases lies within the sound legal discretion of the court to which application is made. The statute provides for such order. See § 7529, Comp. Laws 1913, and from the date of the order entered on the motion to dissolve the temporary injunction, which is the order appealed from, that injunction stands on the same basis as though there had been a hearing on the original application. The court exacted and the plaintiff furnished adequate protection to the state, and under the circumstances the same reasons sustain this order that are applicable to the main contention.

The members of this court fully appreciate the gravity of the situation occasioned by our conclusions, and also that all doubts should be resolved in favor of the validity of the tax. We have carefully considered and analyzed the authorities cited by the state, claimed to sustain its position, but they furnish no justification for sustaining the tax in the light of the Federal authority to which we have made reference, and which is absolutely controlling on the Federal question involved. It is possible that we might have gone further, and held the tax invalid on the face of the law, considering the disproportion between the salaries of the deputy inspectors and the income derived from the number of barrels which form the basis of such salaries at the different ports of entry, but there are indefinite and undisclosed expenditures authorized by the law, so we feel that we should not determine this with reference to the salaries alone. For this reason, and that the state may have the benefit of every doubt on the subject, we deem it proper to remit the case to the trial court for further proceedings, if the state desires to take them. To that end it is given thirty days from the filing of the remittitur in the trial court in which to answer, for the purpose of showing, if possible, that the amount received in fees is not sufficiently in excess of the expenses necessarily incurred in executing the law and making inspections to constitute it a revenue measure. The orders of the District Court are affirmed.

BURKE, J., concurring in part. While I concur in much that is said in the foregoing opinion, it may be of some aid to review the case in a much shorter manner than is possible in writing an official opinion.

As I understand it, there is no doubt that the state may under its police power enact an oil inspection law for the protection of its citizens, and the only objection to chapter 214, Comp. Laws 1913, is the unreasonableness of the fees demanded for such inspection. While the state does not expressly concede the figures stated in the complaint of the oil company, the records of this state, of which this court has a right to take judicial cognizance, show that the fees exacted for the inspection are almost ten times as large as the costs of inspection. It is thus apparent that the said chapter is not only an inspection law, but, under the circumstances, also a revenue-producing law. It is too clear for argument, that the state has no authority to levy taxes in this manner. Those oils presumably are already taxed, and it is a discrimination against them to be required in this manner to further contribute to the support of the state. This has been repeatedly held by the Supreme Court of the United States, as pointed out in the majority opinion, and will compel this court to set aside the law, unless amended, when it comes before us upon direct attack. If the legislature desires to continue the oil inspection, it is therefore its duty to immediately amend the law by reducing the inspection charge.