[File No. 6760]

THE FARMERS UNION OIL COMPANY of Epping, a Corporation, Respondent, v. P. W. KILGORE, Appellant.

(299 NW 318)

Opinion filed July 15, 1941. Rehearing denied August 9, 1941.

*F. F. Wyckoff,* for appellant.

*Walter O. Burk,* for respondent.

BURR, Ch. J. This is an appeal from a judgment permanently restraining and enjoining the defendant from going upon certain premises within the village of Epping in Williams county, and from exercising any control over the same and over a warehouse, oil tanks, and other structures thereon.

Plaintiff, in its complaint, contends that on January 16, 1935, it purchased this property from the defendant, and at the same time employed the defendant as its manager, and that this contract of employment continued until March 24, 1939, when plaintiff discharged the defendant for violation of his contract of employment (stating specific violations), served upon him notice of the termination of the employment; and that despite this, the defendant refuses to surrender possession of the premises, refuses to vacate, still continues to trespass upon the property, and will continue to do the same unless permanently restrained and enjoined. It further alleges that unless the defendant is ousted from the premises, he will continue there, that a judgment against him is uncollectable, and that plaintiff "has no plain, speedy or adequate remedy at law."

The answer admits the sale of the property to the plaintiff, "but denies that under said contract the plaintiff was to have possession of said premises."

The defendant alleges further that on February 7, 1939, the dis-

trict court entered a judgment, ordering and decreeing that "upon the payment, by the plaintiff to the defendant of the balance of the purchase price remaining unpaid . . . the defendant should forthwith vacate said property, real and personal," and "surrender to the plaintiff, custody of such books of accounts," etc.; that the judgment has never been reversed or vacated; and if the defendant be restrained from keeping possession of the property, he will be deprived of his rights under the contract.

Plaintiff's right to the property is based upon a written contract for sale. The record shows that on or before January 16, 1935, the defendant owned "an Oil and Gas distribution station," and had a leasehold interest in some railroad property. On that day the parties entered into this written contract, wherein the defendant is designated the first party, and the plaintiff is designated the second party.

There is no dispute as to the contents of this instrument. It is lengthy, and we do not set it forth in full, sufficient reference being made in this opinion to the determining features.

Plaintiff contends that this contract consists of two independent component parts, one dealing with the purchase of the property, the other with employment; that irrespective of the part dealing with the sale of the property, the plaintiff had the right for good cause to discharge the defendant; and having so discharged him, it was defendant's duty to vacate the premises; that he had ample remedy to enforce the contract of sale; and upon his failure to leave, it was entitled to an injunctional order directing him to leave and to cease interfering with the plaintiff in the conduct and management of the business.

The trial court found that the contract was divisible, that the plaintiff was justified in discharging the defendant; and entered judgment, requiring the defendant to vacate the premises and cease "exercising any control over any and all" of the property involved.

In the major portion of the brief, respondent discusses the right of an employer to discharge an employee for cause, and to an injunction preventing the employee from trespassing upon the property of the employer. But this is not the real issue here. There are certain important provisions in the contract which must be noted. The defendant was the owner of the personal property and the lessee of the real estate. He was selling this property to the plaintiff for $1,884.00, with

interest at 6 per cent until paid; he was to use and operate the oil station for the second party until the note was paid, and for payment was to receive "one half cent per gallon upon all gasoline sold direct to consumers," the amount to be credited monthly upon the purchase price, being the only payments which the plaintiff was required to make. It will be noted that this allowance of one-half cent was only on the gasoline sold direct to consumers. On sales made otherwise, or deliveries made otherwise, he received an additional commission on sales as wages and for the expenses he was required to incur under the contract, such as paying help, furnishing truck, etc., but nothing further on the purchase price.

The defendant was "to be liable for any shortage or shrinkage of gasoline and other fuels," and was to run this "gasoline and other fuels through the meters from tanks where meters are used. As to all other merchandise delivered to the party of the first part . . . the party of the first part is to be liable for any shortage or shrinkage."

Such shortage was to be deducted from the commissions due him.

The legal title was to remain in the defendant until the said note is fully paid; when the note is paid defendant is required to deliver a bill of sale and an assignment of the lease.

There is no allegation in the complaint showing plaintiff has invested anything in the property, made any repairs, or paid any taxes or any rent for the lease; nor does the complaint show what amount, if any, the plaintiff is entitled to as credit on the note. Until the plaintiff has paid its note, it is not entitled to possession of the property. It may be dissatisfied with the way the business was being conducted; but it has remedies for this.

An examination of the contract shows it to be one and indivisible. While the defendant was selling property to the plaintiff, it is specifically agreed between the parties that the legal title was to remain in the defendant, and defendant was to use and operate this property for plaintiff until the purchase price was paid; and that when the price was paid, the defendant was to execute and deliver to the plaintiff a bill of sale, and an assignment of the lease to the property which the defendant held from the Great Northern Railway.

Under the contract the plaintiff was not required to make payments on the note, except by means of the commission mentioned. This com-

mission could not be earned by the defendant if he made no sales. The right of the defendant to remain on, use and operate the property was part of the consideration for the contract. The defendant was to pay his assistants and help at his own expense, and pay the costs of heating and lighting. Clearly, he was to remain in control until he was paid.

Defendant's position was more than that of an employee. He held title to the property, and was to hold the title until he was paid. The plaintiff seeks to deprive him of this right by injunctional order.

We need not determine whether the plaintiff had good cause of complaint against the defendant because of its charges against him. It cannot by this method dispossess the plaintiff of his property in which he has an interest, and which is in his possession. It does not seek to rescind the contract, nor ask for a receiver so as to protect the interests of both parties.

Provisional injunctions are regulated by the Code of Civil Procedure (Comp. Laws, § 7212), and under the provisions of § 7213, a final injunction may be granted to prevent the breach of an obligation existing in favor of the plaintiff:

"1. When pecuniary compensation would not afford adequate relief.

"2. When it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief.

"3. When the restraint is necessary to prevent a multiplicity of judicial proceedings; or,

"4. When the obligation arises from a trust."

Under the Code of Civil Procedure, "The writ of injunction as a provisional remedy is abolished," and that of injunctional order substituted. Comp. Laws, § 7528.

Section 7529 makes provision for the granting of an injunction restraining the commission or continuance of some act, which, during the litigation, would produce injury to the plaintiff, and a temporary injunction may be granted to restrain such acts during the litigation.

There is nothing in our Code which authorizes the court, by an injunction, to take from the defendant property clearly his, and to which he holds title, because there is a dispute betwen the parties as to the fulfillment of the terms of the contract.. It is true the defendant holds this property in trust for the plaintiff, and an injunction will lie

under the provisions of § 7213, Comp. Laws, to prevent the breach of an obligation arising upon a trust; but our statute makes ample provision through receivership for an appointment of a receiver upon the application of "any party whose right to or interest in the property or fund or the proceeds thereof is probable, and when it is shown that the property or fund is in danger of being lost, removed or materially injured." In addition, the court has ample power to appoint receivers according to the usages of courts of equity. See § 7588, Comp. Laws:

As said in Beck v. Kah, 163 Ga 365, 136 SE 160, " 'An injunction can only restrain; it cannot compel a party to perform an act.' An injunction dispossessing one party and admitting another to possession is equivalent to a mandatory injunction. Injunction is not available for the purpose of accomplishing an eviction, or to prevent interference with realty by one already in possession."

The scope of the remedy by injunction is well defined, but "It is not ex debito justitiae for any injury threatened or done to the . . . rights of a person." Strobeck v. McWilliams, 42 ND 30, 34, 171 NW 865, 866.

That injunction is not the proper remedy "in a controversy which involves only the right of possession" of property is set forth in Martinson v. Marzolf, 14 ND 301, 307, 103 NW 937. See also Dickson v. Dows, 11 ND 404, 92 NW 797.

The rule is set forth in 32 CJ 134 that "an injunction will not issue, the effect of which will be to take land out of the possession of one party and put it in the possession of another, at least until complainant's title had been established at law."

The same authority, at page 135, shows that "for the same reasons injunction is not the proper remedy for the recovery of personal property. The general rule is that, when the title to personal property of ordinary character is in dispute and the title asserted by the respective parties is a strictly legal title, the remedy of the party out of possession is at law by an action of replevin, and not by suit in equity for injunction to establish his ownership."

28 Am Jur 323, Injunctions, sets forth the rule regarding injunctions which involve the right to property, showing "the unwillingness of a court of equity to use injunction to take property out of the possession of one party and put it into that of another, or to transfer it to

one whose rights have not been established at law." True, this is dealing with real property, but the same general rule holds good with reference to alleged trespasses upon personal property.

And this rule is of greater force in the case at bar simply from the fact that the plaintiff is not entitled to the possession of the property and is not the legal owner. Even where the title of personal property is in dispute, "the remedy of the party out of possession is at law, by an action of replevin, and he cannot maintain a suit in equity to establish his ownership." Brooks v. Tyner, 38 Okla 271, 132 P 683.

Respondent cites Bartels Northern Oil Co. v. Jackman, 29 ND 236, 150 NW 576, to show that injunction will issue to prevent a continuous series of trespasses, even though a legal remedy may be adequate for a single trespass. However, this case cited has no value here. It is true plaintiff alleges trespass on the part of the defendant, but it is well established that plaintiff is not entitled to an injunction against trespass when he fails to show either title or right of possession in himself. See Lambert v. Shelfer, 139 Ga 734, 78 SE 113; Paul v. Ed Paso (Tex Civ App) 131 SW 438.

The judgment, ousting the defendant from the possession of the property, and the injunctional order issued thereunder, are reversed and the action dismissed.

CHRISTIANSON, NUESSLE, MORRIS, and BURKE, JJ., concur.

BURR, Ch. J. (on petition for rehearing). Plaintiff files a petition for rehearing, based solely upon the contention that because of a judgment of the district court entered February 7, 1939, it was entitled to possession of the property.

Such judgment is not in the record in this case. The defendant, in his answer, alleges the entry of a judgment, and further alleges that this judgment provided, "that upon the payment, by the plaintiff (in this case) to the defendant (in this case) of the balance of the purchanse price remaining unpaid . . . the defendant should forthwith vacate said property . . . and that by the terms of the said judgment the defendant (that is, Kilgore) was and is entitled to continue the management . . . for the purpose of liquidating the indebtedness due him from the plaintiff."

This 'allegation is not disputed in the testimony, nor was the trial court, or this court, asked to take judicial notice of any judgment.

The trial court, in the memorandum opinion, refers to a judgment and to a stipulation made by the parties in the case at bar at the opening of the trial; but this stipulation deals with the contract only, Exhibit 1.

Nowhere in its brief does the plaintiff claim the right to possession had been predetermined, or does it make any claim to possession under any judgment. Such matter is not made an issue herein.

This action is brought by the plaintiff to enjoin the defendant from going upon property, plaintiff stating in the complaint "that *under the terms and conditions of said contract* (Exhibit 1) plaintiff was to have the immediate possession of the premises above described." There is no claim it was entitled to possession under any judgment. In fact, the judgment is pleaded by the defendant to show why the plaintiff *was not entitled to possession,* and that the plaintiff was not to get possession until it paid the amount due on the contract. Neither the findings of fact, nor the conclusions of law, nor the order for judgment is based on said judgment. Throughout the whole trial, it was ignored. This decision in no way affects any rights the parties may have under this judgment referred to.

The case cannot be tried here under issues not presented by the pleadings nor on the trial in the lower court. The petition for rehearing is denied.

CHRISTIANSON, NUESSLE, MORRIS, and BURKE, JJ., concur.